## IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE

### AT NASHVILLE

FEBRUARY SESSION, 2000

FILED

March 10, 2000

Cecil Crowson, Jr.
Appellate Court Clerk

| | | |
|---|---|---|
| STATE OF TENNESSEE, | * | |
| | * | No. M1999-00647-CCA-R3-CD |
| Appellee, | * | |
| | * | DAVIDSON COUNTY |
| vs. | * | |
| | * | Hon. Walter Kurtz, Judge |
| JEFFREY EUGENE WRIGHT, | * | |
| a.k.a. JEFFREY EUGENE ARNELL | * | (Attempted Voluntary |
| | * | Manslaughter; Aggravated |
| Appellant. | * | Assault) |

For the Appellant:

**Thomas H. Miller**
Attorney for Appellant
P. O. Box 681662
Franklin, TN 37068-1662

For the Appellee:

**Paul G. Summers**
Attorney General and Reporter

**David H. Findley**
Assistant Attorney General
Criminal Justice Division
425 Fifth Avenue North
2d Floor, Cordell Hull Building
Nashville, TN 37243-0493

**Victor S. (Torry) Johnson III**
District Attorney General

**Lisa Naylor**
Asst. District Attomey General
Washington Sq., Suite 500
222-2nd Ave. N.
Nashville, TN 37201-1662

OPINION FILED: _____

AFFIRMED IN PART; DISMISSED AND VACATED IN PART

**David G. Hayes,** Judge

The appellant, Jeffrey Eugene Wright, *a.k.a.*, Jeffery Eugene Arnell, was indicted by a Davidson County Grand Jury for the offenses of attempted first degree murder, aggravated assault, and aggravated robbery. Following a jury trial, the appellant was found guilty of attempted voluntary manslaughter and aggravated assault.[1] He was found not guilty of aggravated robbery. At the sentencing hearing, the trial court imposed concurrent sentences of four years for attempted voluntary manslaughter and six years for aggravated assault. The court denied any form of alternative sentencing. In this appeal as of right, the appellant contends (1) that the sentence imposed by the trial court is excessive and (2) that the court erred by imposing a sentence of total confinement.

After review, we modify the appellant's six year sentence for aggravated assault to reflect a sentence of five years. In all other respects, the sentence is affirmed. However, we find that the appellant's conviction for attempted voluntary manslaughter and its accompanying sentence is constitutionally infirm under basic principles of double jeopardy. Accordingly, this conviction and sentence must be vacated and dismissed.

**Background**

On September 29, 1997, Leslie McGehee was mowing the lawn of a residence on Nassau Street in Nashville which was owned by his employer, Dewey Barnett. At approximately 3:30 p.m., Latasha and LaToya McDaniel, residents of 1711 Nassau Street, were outside their residence talking with several male adolescents. One of the youths, Jerome Buchanan, began throwing rocks at a cat. One rock missed and hit a house near where McGehee was mowing the lawn.

---

[1]At the conclusion of the State's case-in-chief, the trial court entered a judgment of acquittal as to the charge of attempted first degree murder. The jury was instructed on the lesser included charges of attempted second degree murder and attempted voluntary manslaughter.

McGehee stopped his yard work and approached the group of youths. He told Buchanan to stop throwing rocks. Buchanan ignored McGehee and continued throwing rocks. McGehee again told Buchanan to stop throwing the rocks. An argument ensued between McGehee and Buchanan.

Meanwhile, the appellant, and his associates Elmer Dansby, James Riley, and Charles Williams, were returning from "the park" where they had been smoking marijuana.[2] The group observed the altercation between McGehee and James Buchanan. The appellant approached and asked McGehee what the problem was. At some point, McGehee began to direct his anger toward the appellant and "swung at [him]." The appellant was able to avoid being hit and moved back. McGehee then tried to kick the appellant. The appellant picked up a brick and threw it at McGehee. After being struck in the head by the brick, McGehee shook his head and began chasing the appellant. Several male youths that were watching the altercation grabbed McGehee and tried to throw him to the ground. Eventually, the mob of youths was successful in pushing McGehee to the ground and began "stomping" and "kicking" him in the head and body.[3] During this attack, a car pulled up, several other males jumped out and joined the assault. The assault ended only when the victim stopped moving. One youth took the victim's wallet while another removed his checkbook. The appellant later admitted to law enforcement officers that, following the incident, he and some others "went and bought some weed and . . . smoked it."

A nearby resident observed the young men running from the motionless victim. The resident called Mr. Barnett asking him to come to the Nassau Street

---

[2]The appellant along with three co-defendants were indicted for the assault of McGehee. James "Dirty" Riley was found guilty of attempted voluntary manslaughter and aggravated assault. Elmer Dansby pled guilty to attempted first degree murder and aggravated robbery. Charles William pled guilty to false report.

[3]Latasha McDaniel testified that approximately ten to fifteen boys were involved in the initial beating of McGehee.

address because "some boys were beating up Lester." "When [Mr. Barnett] arrived on Nassau, the street was empty, and there was nobody but Les laying there . . . ." "When [Mr. Barnett] arrived, McGehee was laying in a fetal position and. . . was breathing heavy . . . ." "He was bleeding from his mouth and nose." Metro Police Officer Vincent Archuleta responded to this incident. As he approached McGehee, he observed that the victim "was laying face down in a rocky gravel dirt area. . .he could see a growing pool of blood that his head was laying in and several large gashes in his head."

Dr. Daniel Himes was the attending physician the day that McGehee was brought into the emergency room at Vanderbilt Medical Center. Upon arrival, the victim was close to unconsciousness, he was sedated and intubated to help him breathe. There was bleeding inside his brain, causing a very serious brain injury. Following his admission, McGehee remained in a coma for twenty-three days. From Vanderbilt, he went to National Healthcare in Murfreesboro for six months and then was in an outpatient program for two months. After completing the outpatient program, McGehee entered the Tennessee Rehabilitation Center where he was in the Traumatic Brain Injury Center for seven months. Since his release, he has been at home with his mother and he remains in outpatient therapy. As a result of the beating, Leslie McGehee is paralyzed in his face and on the left side of his body. "He has a balance problem in walking. . .and has a hard time getting around." He suffers from memory loss and specifically cannot recall the events of September 29.

Based upon this proof, the jury found the appellant guilty of attempted voluntary manslaughter and aggravated assault resulting in bodily injury.

At the subsequent sentencing hearing, the nineteen year old appellant[4] stated that he has been incarcerated since his arrest for the offense. While in jail,

---

[4]The appellant was seventeen at the time of the offense.

he has obtained his GED, successfully completed a drug program and currently participates as a counselor. Prior to the offense, he stated that he was employed at Wendy's. Wendy's Restaurants were unable to verify the appellant's employment. The appellant maintains that he would like to find employment and attend college. He admitted smoking marijuana since his early teen years up until his arrest for the present offense, in addition to the use of alcohol and cocaine. His juvenile record consists of adjudications for assault and theft for which he was granted probation in 1994 and one count of assault and two counts of disorderly conduct in 1997 for which he was granted probation.

Based upon this evidence, the trial court imposed the maximum sentence available for each offense and ordered the sentences to be served concurrently for an effective six year sentence.

## I. Plain Error

Before we begin our examination of the issues raised on appeal, we are first compelled to examine a non-raised issue which affects a constitutional right. The United States and Tennessee Constitutions protect the accused from being twice placed in jeopardy for the same offense. U.S. CONST. amend. V; TENN. CONST. Art. I, Sec. 10. As our supreme court has stated on numerous occasions, three fundamental principles underlie the constitutional protections against double jeopardy: (1) protection against a second prosecution after an acquittal; (2) protection against a second prosecution after conviction; and (3) protection against multiple punishments for the same offense. See State v. Lewis, 958 S.W.2d 736, 738 (Tenn. 1997); State v. Denton, 938 S.W.2d 373, 378 (Tenn. 1996) (citing North Carolina v. Pearce, 395 U.S. 711, 717, 89 S.Ct. 2072, 2076 (1969)).

After the jury returned their verdict in the present case, the appellant filed a motion for judgment of acquittal pursuant to Tenn. R. Crim. P. 29. In this motion,

the appellant argued that the evidence was insufficient to support either a conviction for aggravated assault or a conviction for attempted voluntary manslaughter. Additionally, he asserted that his convictions violate principles of double jeopardy as they arise from one incident and involve one victim. The trial court denied the motion, finding the proof sufficient and no violation of double jeopardy principles in that the convictions arose from two separate incidents. Specifically, the trial court found that (1) the appellant's action of hitting the victim in the head with a brick constituted attempted voluntary manslaughter and (2) once the victim was on the ground as a result of being hit on the head, the appellant and his co-defendants "kicked and stomped the victim unmercifully, supporting the conviction for aggravated assault." No motion for new trial, pursuant to Tenn. R. Crim. P. 33, was filed, and the appellant does not raise the double jeopardy issue on appeal.

A review of the record in the case presently before us leads this court to conclude that the principle protecting against multiple punishments for the same offense is implicated. Generally, this court will not consider issues that are not raised by the parties; however, plain error is an appropriate consideration for an appellate court whether properly assigned or not. State v. Walton, 958 S.W.2d 724, 727 (Tenn. 1997); State v. Ogle, 666 S.W.2d 58, 60 (Tenn.1984). Indeed, an error affecting "the substantial rights of an accused may be noticed at any time ... where necessary to do substantial justice." Tenn. R. Crim. P. 52(b). Thus, we address the issue in order to correct an error of constitutional dimension and to prevent manifest injustice. Tenn. R. Crim. P. 52; Lewis, 958 S.W.2d at 738.

Our supreme court has addressed the issue of multiple punishments arising from a single criminal episode on numerous occasions. See, e.g., State v. Barney, 986 S.W.2d 545 (Tenn. 1999); Denton, 938 S.W.2d at 373; State v. Phillips, 924 S.W.2d 662 (Tenn. 1996). In this respect, the court found the legislative intent to be crucial. Denton, 938 S.W.2d at 379; see also Barney, 986 S.W.2d at 549.

6

Specifically, the court articulated a four part test to determine whether two offenses are the "same" for double jeopardy purposes. The factors to be considered are:

> 1. An analysis of the statutory offenses under Blockburger to determine whether each provision requires proof of an additional fact which the other does not;
>
> 2. An analysis, guided by the principles of Duhac v. State, 505 S.W.2d 237 (Tenn. 1973), of whether the same evidence is required to prove each offense;
>
> 3. A consideration of whether there were multiple victims or discrete acts; and
>
> 4. A comparison of the purposes of the respective statutes.

See Denton, 986 S.W.2d at 381; see also Barney, 986 S.W.2d at 549. The court stressed that "[n]one of these steps is determinative; rather the results of each must be weighed and considered in relation to each other." Denton, 938 S.W.2d at 381; see also Barney, 986 S.W.2d at 549. Additionally, in State v. Phillips, 924 S.W.2d at 662, the court set forth several principles to be considered when determining whether multiple punishments were imposed arising from a single criminal episode:

> 1. A single offense may not be divided into separate parts; generally, a single wrongful act may not furnish the basis for more than one criminal prosecution;
>
> 2. If each offense charged requires proof of a fact not required in proving the other, the offenses are not multiplicitous; and
>
> 3. Where time and location separate and distinguish the commission of the offenses, the offenses cannot be said to have arisen out of a single wrongful act.

Phillips, 924 S.W.2d at 665. Additional factors such as the nature of the act; the time elapsed between the alleged conduct; the intent of the accused; *i.e.*, was a new intent formed; and cumulative punishment may be considered for guidance in determining whether the multiple convictions violate double jeopardy. Id.

We note that the case *sub judice* is similar to Denton which also involved convictions for aggravated assault and attempted voluntary manslaughter. In Denton, the defendant's convictions arose out of an incident wherein the defendant first attacked and then stabbed an individual. Denton, 938 S.W.2d at 378. The

7

court noted that aggravated assault and attempted voluntary manslaughter have different elements under Blockburger. Id. Notwithstanding, the court ruled that the convictions violated double jeopardy. Id. It reached this conclusion by determining that proof of both convictions necessarily relied upon the same evidence, a single attack of a single victim, in violation of the principle announced in Duhac. Id.

With guidance from these principles and consideration of the same, we conclude that the appellant's convictions for attempted voluntary manslaughter and aggravated assault violate the constitutional protections against double jeopardy. Initially, we note that the assault and the homicide statutes have similar legislative purposes, i.e., to deter "assaultive-type conduct." Denton, 938 S.W.2d at 382. Moreover, despite the numerous inconsistencies in the testimony, we conclude that the record preponderates against the trial court's finding that two separate and distinct acts occurred; (1) the appellant hitting the victim with a brick, rendering him unconscious, and (2) the group's actions, including those of the appellant, in "kicking and stomping" the victim. Rather, the proof reveals that, after the appellant threw the brick at the victim, the victim began to chase the appellant at which time the victim was attacked by the group. Contrary to the trial court's findings at the hearing on the motion for judgment of acquittal, we find, from the evidence presented in the record, that the attempted voluntary manslaughter and the aggravated assault arose from a single intent to inflict harm upon McGehee; the actions were contiguous in time and place, and involved the same victim. Accordingly, only one offense was committed and only one conviction may stand. "[U]pon a finding that two convictions cannot both stand, the conviction for the greater offense[, aggravated assault, a class C felony,] must stand and that for the lower offense must be vacated." See State v. Beard, 818 S.W.2d 376, 379 (Tenn. Crim. App. 1991)(citations omitted). Thus, the judgment and sentence upon the charge of attempted voluntary manslaughter, a class D felony, is, therefore, vacated and dismissed.

## II. Sentencing

The appellant challenges both the length and the manner of service of his sentence. As we have dismissed and vacated the appellant's sentence for attempted voluntary manslaughter, we need only address his remaining six year incarcerative sentence for aggravated assault.

In its imposition of the maximum allowable sentence for a range I offender convicted of aggravated assault, the trial court remarked that there are "several enhancement factors applicable." Despite this statement, the court only enumerated two specific factors, (6) the personal injuries inflicted upon the victim were particularly great, and (9) the defendant employed a deadly weapon during the commission of the offense. See Tenn. Code Ann. § 40-35-114(6), -114(9) (1997). With reference to factor (6), the trial court commented that it was placing "tremendous weight" on this enhancement factor in imposing a six year sentence. Additionally, the court only considered one factor in mitigation, the appellant's youth. See Tenn. Code Ann. § 40-35-113(6) (1997). The appellant contends that the trial court misapplied enhancement factor (6), resulting in an excessive sentence. Additionally, the appellant asserts that he is entitled to an alternative sentence despite the trial court's cursory denial based upon the circumstances of the case.

Review, by this court, of the length, range, or manner of service of a sentence is *de novo* with a presumption that the determination made by the trial court is correct. Tenn. Code Ann. § 40-35-401(d) (1997). This presumption only applies if the record demonstrates that the trial court properly considered relevant sentencing considerations. State v. Ashby, 823 S.W.2d 166, 169 (Tenn. 1991). The trial court's findings in the record are cursory and do not reflect a consideration of the relevant sentencing principles, thus, the presumption does not apply.

### A. Enhancing and Mitigating Factors

9

Again, the trial court found that two enhancement factors and one mitigating factor are applicable and imposed the maximum six year sentence. The appellant contends that the trial court erred in applying enhancement factor six, that the injuries were particularly great. He concedes application of factor nine, that a deadly weapon was employed in the commission of the offense.

### 1. Injuries Sustained by Victim were Particularly Great

We conclude that the trial court's application of enhancement factor six was clearly erroneous. Factor (6) may be used when "[t]he personal injuries inflicted upon ... the victim [were] particularly great." Tenn. Code Ann. § 40-35-114(6). Our supreme court has precluded application of enhancement factor six to convictions for aggravated assault when the indictment charges serious bodily injury. State v. Jones, 883 S.W.2d 597 (Tenn.1994). Specifically, the court in Jones concluded that since "serious bodily injury" includes "a substantial risk of death," "protracted unconsciousness," "extreme physical pain," "protracted or obvious disfigurement," and "protracted loss or substantial impairment of a function of a bodily member, organ, or mental faculty" as defined in Tenn. Code Ann. §§ 39-13-102; 39-11-106(a)(2) & (33), factor (6) is always an element of aggravated assault causing serious bodily injury and cannot be used to enhance a sentence for that offense. Jones, 883 S.W.2d at 602; see also State v. Crowe, 914 S.W.2d 933, 940 (Tenn. Crim. App. 1995). Therefore, enhancement factor (6) may not be used to enhance the appellant's sentence.

### 2. Presence of Enhancement Factor (9)

Regarding application of enhancement factor nine, we note that enhancement factors based on facts which are used to prove the offense or which establish the elements of the offense are excluded. State v. Poole, 945 S.W.2d 93, 98 (Tenn. 1997). However, the use of a deadly weapon, in this case a brick, is not an element of the offense of aggravated assault resulting in serious bodily injury.

10

Accordingly, factor 9 is applicable.

### 3. Mitigating Factors

Our *de novo* review of the record supports the trial court's application of factor (6), the defendant lacked substantial judgment due to his youth. See Tenn. Code Ann. § 40-35-113(6) (1997). The record does not support any other mitigating circumstances. Thus, upon *de novo* review, we apply enhancement factors (9) and mitigating factor (6).

### 4. Length of Sentence

In determining the appropriate sentence for a felony conviction, Tenn. Code Ann. § 40-35-210(c) and (e) (1997), instruct the sentencing court that "[t]he presumptive sentence shall be the minimum sentence in the range . . . [s]hould there be enhancement and mitigating factors, the court must start at the minimum sentence . . ., enhance the sentence within the range as appropriate for the enhancement factors, and then reduce the sentence within the range as appropriate for the mitigating factors." The range I sentence for aggravated assault is three to six years. See Tenn. Code Ann. § 40-35-112(a)(3) (1997).

No specific value is attributed to any particular enhancing or mitigating factor. See State v. Boggs, 932 S.W.2d 467, 476 (Tenn. Crim. App. 1996). Rather, the weight afforded the mitigating and enhancement factors derives from balancing relative degrees of culpability within the totality of the circumstances of the case involved. Boggs, 932 S.W.2d at 476 (citing State v. Moss, 727 S.W.2d 229, 238 (Tenn. 1986)). Upon consideration of the facts and circumstances of the case and the applicable principles of sentencing, we conclude that a sentence of confinement of five years is justified.

### B. Alternative Sentencing

11

Finally, the appellant contends that the trial court erred by imposing a sentence of total confinement, rather than granting a sentencing alternative.[5] Without articulating more, the trial court made a cursory statement that confinement was necessary due to the circumstances of the present case.

The appellant, is a range I offender of a class C felony who does not have a criminal history evincing either a "clear disregard for the laws and morals of society" or "failure of past efforts at rehabilitation." See Tenn. Code Ann. § 40-35-102(5); -102(6) (1997). Accordingly, the appellant is provided the presumption favoring alternative sentencing. See State v. Bingham, 910 S.W.2d 448, 453 (Tenn. Crim. App.), perm. to appeal denied, (Tenn. 1995). Where a defendant is entitled to the statutory presumption of alternative sentencing, the State has the burden of overcoming the presumption with evidence to the contrary. See, e.g., Tenn. Code Ann. § 40-35-103(1)(A-C).

The fact that a defendant is entitled with a presumption favoring alternative sentencing does not mean that he is entitled to an alternative sentence. Indeed, the presumption may be rebutted by evidence to the contrary. Tenn. Code Ann. § 40-35-102(6); see also Bingham, 910 S.W.2d at 454. Guidance as to what constitutes evidence to the contrary may be found in Tenn. Code Ann. § 40-35-103(1)(A)-(C). If it is shown that the appellant has a long history of criminal conduct, that the appellant has not been rehabilitated with less restrictive methods, or that confinement is necessary to avoid depreciating the seriousness of the offense or to provide an effective deterrent to others, alternative sentences may be denied. Id.

---

[5]The appellant concedes that he is ineligible for a sentence under the Community Corrections Act. See Tenn. Code Ann. § 40-36-106(a)(2) (1997) (offender cannot be convicted of crime against person as provided in title 39, chapter 13, parts 1-5);Tenn. Code Ann. § 40-36-106(a)(3) (offender cannot be convicted of violent felony offense). Morever, he does not claim to meet an exception to these requirements under Tenn. Code Ann. § 40-36-106(c) (ineligible offenders with special needs). In addition to the appellant's preclusion from a community corrections sentence, we acknowledge that the appellant had already served nineteen months in confinement at the time of his sentencing hearing; accordingly, total probation is not a logical consideration.

See also  Bingham, 910 S.W.2d at 454 (citing Ashby, 823 S.W.2d at 169).

In order to deny an alternative sentence based on the seriousness of the offense, "the circumstances of the offense as committed must be especially violent, horrifying, shocking, reprehensible, offensive, or otherwise of an excessive or exaggerated degree" and the nature of the offense must outweigh all factors favoring a sentence other than confinement." Bingham, 910 S.W.2d at 454 (quoting State v. Hartley, 818 S.W.2d 370, 374-75 (Tenn. Crim. App. 1991)).  The circumstances of the case *sub judice* satisfy this criteria.  It is difficult to envision a much more horrifying, shocking, or reprehensible situation than that which was perpetrated by the appellant and his accomplices in the present case.  After an initial confrontation with the appellant, the victim was pushed to the ground by a mob of youths, including the appellant, at which time he was kicked, stomped, and punched by the group.  The rage of each youth was encouraged by the violence of the others, more joining in the assault as they approached the scene.  The brutal attack ended only when the victim was rendered unconscious and a bystander threatened to call law enforcement officers.  Before leaving the scene, however,  the attackers removed the victim's wallet and checkbook.  Apparently unscathed by their actions, the appellant and his cohorts proceeded to purchase and then smoke marijuana.   Accordingly, we conclude that a sentence of total confinement is justified based upon the seriousness of the offense.  See  Tenn. Code Ann. § 40-35-103(1)(B).

After a review of the record and in consideration of our finding of one enhancement and one mitigating factor , we modify the six year incarcerative sentence imposed for the appellant's conviction for aggravated assault to a term of five years.  In all other respects, this sentence is affirmed.  However, the appellant's conviction and sentence for attempted voluntary manslaughter is reversed and vacated as violative of principles of double jeopardy.  This cause is remanded to the

trial court for the purpose of permitting the court to amend its minutes and accompanying judgments of conviction to reflect the same.

_____
DAVID G. HAYES, Judge

CONCUR:

_____
JERRY L. SMITH, Judge

_____
NORMA MCGEE OGLE, Judge